**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **KENNETH R. MAHONEY,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:09-CV-810-L (BH)** |
| | § | |
| **COMMISSIONER OF SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to *Special Order No. 3-251*, this case was automatically referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation for disposition. Before the Court are *Plaintiff's Motion for Summary Judgment and Brief in Support* ("Pl. Br."), filed July 8, 2009, and *Defendant's Motion for Summary Judgment and Brief in Support* ("Def. Br."), filed August 6, 2009. Based on the relevant filings, evidence, and applicable law, the Court recommends that *Plaintiff's Motion for Summary Judgment* be **GRANTED,** *Defendant's Motion for Summary Judgment* be **DENIED**, and the case be remanded to the Commissioner for further proceedings.

## I. BACKGROUND[1]

### A.   Procedural History

Kenneth R. Mahoney ("Plaintiff") seeks judicial review of a final decision by the

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

- 1 -

Commissioner of Social Security ("Commissioner") denying his claim for disability benefits under

Title II and Title XVI of the Social Security Act.  On August 14, 2006, Plaintiff filed applications

for disability insurance benefits ("DIB") and supplementary security income ("SSI").  (Tr. at 107,

110).  Plaintiff claimed he had been disabled since August 25, 2005, due to neck, lower-back, and

hip injuries from an automobile accident.  (Tr. at 110, 127).  His application was denied initially and

upon reconsideration.  (Tr. at 64, 77).  Plaintiff timely requested a hearing before an Administrative

Law Judge ("ALJ").  (Tr. at 83).  He personally appeared and testified at a hearing held on August

21, 2008.  (Tr. at 25, 27-54).  On December 10, 2008, the ALJ issued her decision finding Plaintiff

not disabled.  (Tr. at 11-22).  The Appeals Council denied Plaintiff's request for review, concluding

that the contentions raised in his request for review did not provide a basis for changing the ALJ's

decision.  (Tr. at 1-4).  Thus, the ALJ's decision became the final decision of the Commissioner.

(Tr. at 1).  Plaintiff timely appealed the Commissioner's decision to the United States District Court

pursuant to 42 U.S.C. § 405(g) on April 30, 2009.

**B.      Factual History**

      **1.      Age, Education, and Work Experience**

Plaintiff was born in 1956.  (Tr. at 123).  At the time of the hearing before the ALJ, he was

52 years old and had obtained a certificate of General Educational Development.  (Tr. at 27).  His

past relevant work experience included work as a van converter, a building maintenance repairer,

and a forklift operator.  (Tr. at 54-55).  Plaintiff last worked in 2005.  (Tr. at 27, 127).

      **2.      Medical Evidence**

Plaintiff's relevant medical evidence begins in December of 2005, when Dr. Michael R.

Malone, D.O., saw him twice for complaints of pain in the low back, neck, shoulders, and thoracic

spine. (Tr. at 211-13). Plaintiff reported that the pain was related to an accident he suffered in 2003 involving a motor vehicle collision. (Tr. at 211-12). Plaintiff's physical examination revealed that he had a full range of motion in the thoracic spine, an 85 percent range of motion in the lumbar spine, and an 80 to 85 percent range of motion in the cervical spine with tenderness and palpation. (Tr. at 206-13). The disc spaces in Plaintiff's cervical spine were "reasonably symmetric and well preserved." (Tr. at 210). Plaintiff had a mild and diffuse spondylosis of the cervical spine, and a mild lumbar degenerative condition. (Tr. at 210, 214, 216). He had a normal gait, required no assistive devices for ambulation, and had an intact motor and sensory neurovascular status in the bilateral upper and lower extremities. (Tr. at 206-212). Plaintiff's bilateral upper extremities were in the normal active and passive range of motion. (Tr. at 212). He had a symmetric and bilateral range of motion in his shoulders, without any limitations, restrictions, deformity, swelling, tenderness, or palpation. (Tr. at 207). Radiographs of Plaintiffs shoulders were normal, and did not show any obvious lucency, fracture or dislocation. (Tr. at 210, 214). Dr. Malone noted that he was not concerned about any nerve impingement syndrome, and that Plaintiff simply had chronic pain related to his myofascial structures. (Tr. at 207). He recommended that Plaintiff undergo physical therapy and take Celebrex. (Tr. at 207, 210).

On February 24, 2006, Dr. Kalman Shwarts, M.D., conducted a residual functional capacity ("RFC") assessment of Plaintiff in order to help the Department of Assistive and Rehabilitative Services ("DARS") determine Plaintiff's ability to work or receive training. (Tr. at 242-43). Dr. Shwarts opined that Plaintiff had the ability to sit, stand or walk for up to 8 hours a day, and lift 10 to 20 pounds frequently and 20 to 50 pounds occasionally. *Id.* He could occasionally bend, squat, kneel, twist, and reach with unlimited hand function. (Tr. at 243). Plaintiff was able to reach overhead, at shoulder level, and below the waist, but only on an occasional basis. *Id.* A medical

consultant for DARS also reviewed Plaintiff's medical evidence but opined that Plaintiff did not have any functional limitations.  (Tr. at 241).

On June 2, 2006, Plaintiff visited Dr. Shwarts with complaints of pain in his neck, shoulders, mid-back, low-back, and hips.  (Tr. at 280).  Dr. Shwarts made a primary diagnosis of low back pain and prescribed physical therapy.  (Tr. at 283).  A physical therapy progress report, dated June 16, 2006, from Baylor Medical Center at Waxahachie reveals that physical therapy alleviated Plaintiff's back pain, improved the range of motion in his trunk and neck, increased his walking without significantly increasing his pain, and improved his stability.  (Tr. at 294, 304).

On September 18, 2006, Dr. John Durfor, M.D., a physician with the Disability Determination Services, assessed Plaintiff's RFC and concluded that Plaintiff could stand, walk, or sit for about 6 hours in an 8-hour workday; push, pull, handle, finger, and feel without limitation; frequently balance and crawl; occasionally lift and carry 50 pounds and frequently lift 25 pounds; occasionally stoop, kneel and crouch; occasionally climb ramps and stairs; never climb ladders and scaffolds; and avoid exposure to hazards.  (Tr. at 305-12).  Dr. Durfor further concluded that Plaintiff was limited in reaching all directions, including overhead.  (Tr. at 308).

On October 10, 2006, Plaintiff saw Dr. Charles Osborn, M.D., with complaints of constant pain in the neck with stiffness, and pain in the mid back and low back with radiation to the left hip and leg.  (Tr. at 319).  Dr. Osborn reported that Plaintiff had objectively exhibited paradorsal and bilateral shoulder muscle spasm with tenderness and palpation.  *Id.*  He also noted that Plaintiff had signs of chronic pain syndrome which explained his loss of sleep, lethargy, and early signs of depression.  (Tr. at 320).  He recommended spinal manipulation, a high voltage massage, cold packs and myofascial release, and ordered MRIs of the cervical and lumbar spine.  (Tr. at 320, 326, 328).  An MRI report concerning Plaintiff's cervical spine concluded that he had cervical protrusions at

- 4 -

the C6-7 level, contacting the ventral cord, and contributing to mild central spinal stenosis at that level.  (Tr. at 327).   The MRI also showed mild neuroforaminal stenosis due to disc edema, dessication of discs throughout the cervical range, and mild thinning of the discs at mid-cervical levels.  *Id.*   An MRI of Plaintiff's lumbar spine showed multilevel herniations and arthrosis throughout the lumbar range.  (Tr. at 329).

That same month, Dr. Osborn referred Plaintiff to Dr. Andrew Small, M.D., for an evaluation regarding his pain medications.  (Tr. at 322).  Dr. Small noted that Plaintiff had all the symptoms of major depressive disorder except for suicidal ideations and loss of libido.  (Tr. at 317).  Dr. Small prescribed Elavil for his depression.  (Tr. at 314).   In early 2007, a psychologist, Katherine Donaldson, Psy. D., diagnosed plaintiff with paranoid personality disorder and a single mild episode of major depressive disorder.  (Tr. at 331, 336).  In March 2007, Dr Osborn concluded that Plaintiff suffered from permanent partial disability and that he could not perform work requiring prolonged looking up or down, or work at a level above his shoulders.  (Tr. at 369).

### 3.    Hearing Testimony

A hearing was held before the ALJ on August 21, 2008.  (Tr. at 25).  Plaintiff appeared personally and was represented by an attorney.  *Id.*

#### a.  *Plaintiff's Testimony*

Plaintiff testified that he was 52 years old, had obtained a certificate of General Educational Development, and had worked as a forklift operator for the past 15 years.  (Tr. at 27-29).

Concerning his medical impairments, Plaintiff testified that he had a bulging disc in the back of his neck that produced pain in his arms and numbness in his fingers and a bulging disc in his lower back that caused his left leg to go numb sometimes.  (Tr. at 30).  He suffered from anxiety, causing him to "blow up at people."  (Tr. at 31, 36-37).  He depended on his parents for everything,

and did not interact socially with other people.  (Tr. at 36, 40).  His anxiety medication, when he had been taking it, helped him to sleep.  (Tr. at 37).  Without his medication, and because of his hip and back pain, he could not get more than two and a half hours of sleep at night.  (Tr. at 37).  On an average day, his pain level was 4 to 5 on a scale of 10.  (Tr. at 38).  On many cold or wet mornings, he experienced a pain level of 8 to 9.  *Id.*  To manage his pain, he took a large number of Tylenol and Advil pills.  *Id.*  He had previously used Naproxen, Tramadol and Alprazolam for his pain, and had found them very helpful.  (Tr. at 38-39).  Plaintiff testified that turning his head triggered pain in his arms and shoulders, and turning it too quickly caused shooting pain in the back of his brain.  (Tr. at 42).  Plaintiff testified that he had not been receiving any treatment for his medical problems recently because he did not have a job or insurance to cover his medical expenses, and his past experience with indigent care programs had been disappointing.  (Tr. at 31-35).

Plaintiff testified that his daily routine varied based on how he was feeling that day.  (Tr. at 41).  Depending on his pain, he either got out of bed at 10:00 in the morning or stayed in bed until 2:00 in the afternoon.  (Tr. at 41).  Sometimes he found it very painful to walk, but liked to walk outside his house to the mailbox or to talk to his neighbor.  (Tr. at 40-41).  Plaintiff tried to help his mother by vacuuming the house, but he had to do it very slowly and one room at a time.  (Tr. at 40).  A quick trip to the grocery store exhausted him very easily.  (Tr. at 43).  On one occasion, changing a flat tire triggered his neck and shoulder problems so much that he had to spend two days in bed.  (Tr. at 42).  His sleep pattern every night consisted of sleeping 2 to 2.5 hours at a time, waking up because of the discomfort in his body, watching TV or eating something, and then trying to go back to sleep.  (Tr. at 43).

### b. Witness's Testimony

Dorothy Mahoney Parkins, Plaintiff's mother, also testified at the hearing.  (Tr. at 24, 49-54).

Ms. Parkins stated that Plaintiff's automobile accident took everything away from him, including his happy-go-lucky demeanor and the work as a forklift operator that he loved to do. (Tr. at 49). He became angry very easily, threw fits, and was unable do all the chores that he used to do around the house. (Tr. at 49-50). Even lifting a bottle of water became a painful experience for him. *Id.* He slept very little, about two hours every night. (Tr. at 51). He moved out of his parents' house after the accident because the ensuing problems caused tempers to flare. (Tr. at 52). Ms. Parkins testified that her husband had to go back to work because of Plaintiff's financial situation. *Id.* She also testified that her husband was footing the bill for Plaintiff's groceries, rent, utilities, and other needs. *Id.*

### c. *Vocational Expert's Testimony*

A vocational expert ("VE") also testified at the hearing. The VE testified that Plaintiff's past relevant work included his jobs as van converter (medium, skilled, SVP 5), maintenance repairer (medium, skilled, SVP 7), and forklift operator (medium, semi-skilled, SVP 3). (Tr. at 54-55).

The ALJ asked the VE to assume a hypothetical person of Plaintiff's age, education, and work experience who could perform light work; was limited to occasional overhead reaching; could occasionally stoop, kneel, crouch, crawl, balance and climb; could only do simple repetitive work; and was unable to deal with the public. (Tr. at 55). The ALJ then asked the VE to opine whether such a person would be able to perform any work in the economy. *Id.* The VE testified that for such an individual, the light, unskilled occupational base of 1570 would erode down to approximately 1346 occupations. *Id.* Three examples would be the jobs of a garment sorter (Light, SVP 3, DOT # 209.587-034, with 161,404 jobs nationally and 1800 in Texas), cleaner or housekeeper (light, SVP 2, DOT # 323.687-014, with 2000,000 jobs nationally and 52,000 in Texas), and photocopy machine

operator (light, SVP 2, DOT # 207.685-014, with 222,190 jobs nationally and 2550 in Texas).  *Id.*

The VE also testified that for a younger individual, the sedentary unskilled base of 136 would be eroded down to approximately 122 occupations.  (Tr. at 56).  Three examples would be the jobs of a document preparer (sedentary, SVP 2, DOT # 249.587-018, with 160,000 jobs nationally and 3000 in Texas), clerical addresser (sedentary, SVP 2, DOT # 209.578-010, with 707,282 jobs nationally and 3337 in Texas), and dowel inspector (Sedentary, SVP 2, DOT # 669.687-014, with 649,130 jobs nationally and 3187 in Texas).  *Id.*  The VE further testified that if such an individual had to miss at least three days of work per month because of pain or other limitations, he would not be able to maintain employment.  *Id.*

## C.    **ALJ's Findings**

The ALJ denied Plaintiff's application for benefits by written opinion issued on December 10, 2008.  (Tr. at 14-22).  The ALJ found that Plaintiff met the insured status requirements through December 31, 2010, and had not engaged in substantial gainful activity since the alleged onset of disability, August 25, 2005.  (Tr. at 16, ¶¶1, 2).  In addition, he found that Plaintiff had a severe combination of impairments including neck and back disorders, mild major depressive disorder, and a personality disorder.  (*Id.*, ¶3).  However, the ALJ concluded that Plaintiff's impairments did not meet or equal a listed impairment.  (*Id.*, ¶4).  The ALJ found that Plaintiff was 49 years old on the alleged onset date, which is defined as a younger individual.  (Tr. at 20, ¶7).

The ALJ found that Plaintiff had the RFC to: maintain employment at the level of lifting and carrying a maximum of 20 pounds occasionally and 10 pounds frequently; standing and walking at least 6 hours in an 8 hour workday; sitting "at least 8-hour workday;"[2] occasional climbing,

---

[2] The ALJ does not specify how many hours Plaintiff can sit in an 8-hour workday.  (*See* Tr. at 17, ¶ 5).

balancing, stooping, kneeling, crouching, and crawling; and occasional overhead reaching. (Tr. at 17, ¶5). She also limited Plaintiff to simple, repetitive, unskilled work with no work around the public. *Id.* The ALJ also found that Plaintiff, with his RFC, was unable to perform his past relevant work. (Tr. at 20, ¶6). The ALJ found, however, that Plaintiff could perform other jobs that existed in significant numbers in the national economy. (Tr. at 21, ¶10). Based on these findings, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date through the date of her decision. (*Id.*, ¶11).

## II. ANALYSIS

### A.   Legal Standards

#### 1.      Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program

is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id.* Thus, the Court may rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See id.*

### 2.      Disability Determination

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1.   An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2.   An individual who does not have a "severe impairment" will not be found to be disabled.

3.   An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4.   If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5.   If an individual's impairment precludes him from performing his past work,

> other factors including age, education, past work experience, and residual
> functional capacity must be considered to determine if work can be
> performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability.

*Leggett*, 67 F.3d at 564.  The analysis terminates if the Commissioner determines at any point during

the first four steps that the claimant is disabled or is not disabled.  *Id.*  Once the claimant satisfies

his or her burden under the first four steps, the burden shifts to the Commissioner at step five to

show that there is other gainful employment available in the national economy that the claimant is

capable of performing.  *Greenspan*, 38 F.3d at 236.  This burden may be satisfied either by reference

to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other

similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).  A finding that a claimant

is not disabled at any point in the five-step review is conclusive and terminates the analysis.

*Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**B.**     **Issues for Review**

Plaintiff presents the following issues for review:

(1)     The ALJ rejected the opinion of Dr. Shwarts which resulted in prejudice to Plaintiff; and

(2)     The ALJ erred in rendering the severity of Plaintiff's chronic pain syndrome when evaluating the combination of impairments.

(Pl. Br. at 1).  Because the second issue is dispositive, the Court considers it first.

**C.**     **Issue Two: Combination of Impairments**

Plaintiff contends that the ALJ failed to comply with 20 C.F.R. § 404.1523 when she

implicitly found Plaintiff's chronic pain syndrome to be a non-severe impairment.  (Pl. Br. at 7).

Plaintiff argues that the ALJ was required to consider the effect of all of Plaintiff's medical impairments when determining the severity of those impairments.  *Id.*

In making a disability determination, an ALJ is required to determine whether a claimant has "impairments" which, singly or in combination, are severe. 42 U.S.C. § 1382c. "For Social Security disability purposes, an 'impairment' is an abnormality that can be shown by medically acceptable clinical and laboratory diagnostic techniques, and in fact must be established by medical evidence as opposed to the claimant's subjective statement or symptoms." *Prince v. Barnhart*, 418 F. Supp. 2d 863, 867 (E.D. Tex. 2005) (citing 20 C.F.R. § 416.908).  When determining whether a claimant's impairment or impairments are severe, an ALJ is required to consider the combined effects of all physical and mental impairments regardless of whether any impairment, considered alone, would be of sufficient severity.  *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (citing 20 C.F.R. § 404.1523).  If the ALJ does find a medically severe combination of impairments, "the combined impact of the impairments [must] be considered throughout the disability determination process." 20 C.F.R. § 404.1523.  In this case, the ALJ found that Plaintiff had a medically severe combination of impairments, including neck and back disorders, mild major depressive disorder, and a personality disorder.  (Tr. at 16, ¶3).  She did not list chronic pain syndrome as one of those impairments.  *Id.*

The record contains two physician reports concerning the possible existence of chronic pain syndrome.  (Tr. at 319, 207).  Dr. Osborn's report noted that Plaintiff had signs of chronic pain syndrome which explained his loss of sleep, lethargy, and early signs of depression.  (Tr. at 320). It also noted his "objective finding" that Plaintiff had "objectively exhibited paracervical, paradorsal and bilateral shoulder muscle spasm with...tenderness to palpation."  (Tr. at 319).  Dr. Malone's

report opined that "Plaintiff simply had chronic pain related to his myofascial structures."  (Tr. at 207).  Although it is unclear whether Dr. Osborn definitively diagnosed Plaintiff with chronic pain syndrome, he noted that chronic pain syndrome explained Plaintiff's loss of sleep, lethargy, and early signs of depression.  (Tr. at 319-20).  He also noted that Plaintiff objectively exhibited muscle spasms, tenderness, and palpation.  (Tr. at 319).  Dr. Malone's assessment shows a definitive diagnosis of chronic pain syndrome related to Plaintiff's myofascial structures.  (Tr. at 207).  Because the existence of Plaintiff's chronic pain syndrome can be shown by medically acceptable clinical diagnostic techniques and is established by medical evidence as opposed to Plaintiff's subjective statements or symptoms, the ALJ could conclude that Plaintiff suffered from the medically determinable impairment of chronic pain syndrome.  *Prince*, 418 F. Supp. 2d at 867; 20 C.F.R. § 416.908.

Additionally, there is some evidence as to how Plaintiff's chronic pain syndrome allegedly affected his ability to work.  As noted above, Dr. Osborn's report stated that chronic pain syndrome explained Plaintiff's loss of sleep, lethargy, and early signs of depression.  (Tr. at 320).  Plaintiff himself made several statements at the hearing regarding the effect of his pain on his ability to work.  For example, he testified that the pain and discomfort he felt in different parts of his body affected his sleep pattern to where he could only sleep 2 to 2.5 hours at a time.  (Tr. at 43).  He also testified that the pain affected his ability to walk.  (Tr. at 40-41).  Plaintiff's mother testified that Plaintiff found even simple tasks, such as lifting a water bottle, painful.  (Tr. at 51).  Dr. Osborn's statement, in conjunction with testimony about Plaintiff's physical limitations, constituted some evidence as to how his chronic pain syndrome, alone or in combination with other impairments, allegedly affected his ability to work.  Therefore, there is some evidence to support a finding that Plaintiff's

chronic pain syndrome was severe.  *See Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

The ALJ's opinion reflects no consideration of the alleged severe impairment of chronic pain syndrome.  (*See* Tr. at 14-22).  Because she failed to include it as an impairment, she failed to consider the effect of Plaintiff's chronic pain syndrome in combination with his other impairments. (Tr. at 16, ¶3).  In determining whether Plaintiff's impairments, singly or in combination, were severe, the ALJ was required to consider the combined effects of all physical and mental impairments regardless of whether any impairment, considered alone, was sufficiently severe.  *Loza*, 219 F.3d at 393.  Moreover, she was required to consider the combined impact of the impairments throughout the disability determination process.  20 C.F.R. § 404.1523.  In failing to consider the effect of Plaintiff's chronic pain syndrome in compliance with 20 C.F.R. § 404.1523, the ALJ committed error.

Violation of a regulation constitutes reversible error and requires remand only "when a reviewing court concludes that the error is not harmless."  *Pearson v. Barnhart*, 2005 WL 1397049, at *4 (E.D. Tex. May 23, 2005) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)). Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error.  *Bornette v. Barnhart*, 466 F.Supp.2d 811, 816 (E.D. Tex. Nov. 28, 2006) (citing *Frank*, 326 F.3d at 622).  Since it is conceivable in this case that the violation of 20 C.F.R. § 404.1523 resulted in an improper RFC assessment by the ALJ and consequently an improper disability determination, the error is not harmless and requires remand.

Defendant argues that Plaintiff's failure to allege chronic pain syndrome in his applications for disability benefits prevents him from claiming it now.  (D. Br. at 6).  Although Plaintiff did not specifically allege chronic pain syndrome as an impairment in his applications for social security

- 14 -

benefits, he also did not allege any of the other conditions that the ALJ later found to be impairments. (*See* Tr. at 16,127).  Moreover, there were several facts in the record that alone or taken together were sufficient to alert the ALJ to the existence of the impairment.  *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3rd Cir. 2005).  Plaintiff claimed in his application for benefits that he was disabled due to neck, lower-back, and hip injuries from an automobile accident. (Tr. at 127).  A major portion of Plaintiff's medical record was devoted to his complaints of pain in different parts of his body.  Most significantly, the medical record contained two diagnostic statements by Plaintiff's treating physicians concerning his chronic pain syndrome. (Tr. at 207, 320).  All of these facts were enough to alert the ALJ to the existence of the chronic pain syndrome.  *Rutherford*, 399 F.3d at 553.

Defendant further argues that Plaintiff cannot establish chronic pain syndrome as a medically determinable illness because the record does not contain a diagnosis of chronic pain syndrome.  (D. Br. at 6).  As discussed earlier, a medically determinable impairment is an abnormality that can be shown by medically acceptable clinical and laboratory diagnostic techniques, and is established by medical evidence.  *Prince*, 418 F. Supp. 2d at 867; 20 C.F.R. § 416.908.  In this case, Dr. Malone definitively diagnosed Plaintiff with chronic pain of the myofascial structures. (Tr. at 207).  Even if there was no definitive diagnosis of chronic pain syndrome, Dr. Osborne's assessment that Plaintiff had signs of chronic pain syndrome was based on clinical diagnostic techniques.  (Tr. at 319-20).  Dr. osborn noted that Plaintiff objectively exhibited muscle spasms, tenderness and palpation, and that his chronic pain syndrome explained his loss of sleep, lethargy, and early signs of depression.  *Id.*

Finally, Defendant relies on *Domingue v. Barnhart*, 388 F.3d 462 (5th Cir. 2004) for the

proposition that an ALJ commits error at Step 2 only if the record contains evidence that the alleged impairment affected Plaintiff's ability to work.  (D. Br. at 6).  As noted earlier, the record in this case does contain evidence that Plaintiff's alleged impairment of chronic pain syndrome affected his ability to work.  (*See* Tr. at 40-43, 51, 320).

For the reasons discussed above, the Court finds that the ALJ committed reversible error in failing to consider Plaintiff's chronic pain syndrome in making his disability determination.  Since remand is required at Step 2, the Court does not consider Plaintiff's other issue for review.

### III.   RECOMMENDATION

*Plaintiff's Motion for Summary Judgment* should be **GRANTED**, *Defendant's Motion for Summary Judgment* should be **DENIED**, and the decision of the Commissioner should be **REVERSED** and the case **REMANDED** for reconsideration.

**SO RECOMMENDED**, on this 10th day of September, 2009.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE